**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**RONALD WHITCOMB,**

    **Plaintiff,**

**v.**                                        **CASE NO. 5:13-cv-30-RS-EMT**

**CITY OF PANAMA CITY; FRANK
McKEITHEN, in his official capacity as
SHERIFF OF BAY COUNTY, FLORIDA;
CHRIS TAYLOR, individually; MARK
AVILES, individually; JEFFREY BECKER,
Individually; and SCOTT TEEPLE, individually,**

    **Defendants.**
_____/

## **ORDER**

Before me are Defendant Scott Teeple's Motion for Summary Judgment (Doc. 96), Plaintiff's Response and Memorandum in Opposition to Defendant Teeple's Motion for Summary Judgment (Doc. 129), Defendant Frank McKeithen's Motion for Summary Judgment (Doc. 97), and Plaintiff's Response and Memorandum in Opposition to Defendant McKeithen's Motion for Summary Judgment (Doc. 128).

## **STANDARD OF REVIEW**

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

An issue of fact is material "if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Wright v. Sandestin Investments, LLC,* 914 F. Supp. 2d 1273, 1278 (N.D. Fla. 2012). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## **BACKGROUND**

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

On September 5, 2010, Defendant Teeple, employed by the Bay County Sheriff, was dispatched in response to a call from Plaintiff's wife, Heather Whitcomb, to 911 about a conversation she had just concluded with the Plaintiff, in which she reported that Plaintiff had threatened to kill himself. Doc. 127. Although it is undisputed that Plaintiff told his wife he was "going to end it all after [I] finish [my] last cigarette," Plaintiff disputes that he meant he was going to kill himself and claims he is unaware whether Defendant Teeple overheard this telephone conversation. Doc. 126-10, p. 9. After speaking with Heather Whitcomb, Defendant Teeple located Plaintiff at a friend's house and asked him to step outside to speak with him about the alleged suicide threats he made to Heather Whitcomb earlier that evening. Doc. 127.

During this conversation, Plaintiff did not deny making the statements that he was "going to end it all," and admitted to owning a shotgun, but claims that it was in his daughter's possession. Doc. 126-10, p. 9. Instead, Plaintiff explained to

Defendant Teeple he had made those threats in an attempt to shock Ms. Whitcomb and was "trying to see if she cared about" him. Doc. 126-10, p. 14. Additionally, he claims he actually meant that he was going to end the marriage after his last cigarette, not kill himself. Doc. 127. Despite these explanations and as a result of Defendant Teeple's investigation, he believed that Plaintiff met the criteria to be taken into custody for evaluation pursuant to the Baker Act. Doc. 127. Consequently, Plaintiff was institutionalized at Emerald Coast Behavioral Hospital and held for 72 hours. Doc. 127.

On September 19, 2010, Plaintiff and his wife were involved in two separate public altercations. Doc. 127. Even though Plaintiff and his wife disagree on what occurred during the first event, it is undisputed that neither party contacted law enforcement or requested the assistance of law enforcement. Doc. 127. The second event occurred later that evening. Doc. 127. Again, the Plaintiff and his wife disagree on what transpired during the altercation, but it is undisputed that Plaintiff took possession of Ms. Whitcomb's car, owned jointly by them, without her permission, and drove to his residence. Doc. 127, Doc. 126-10, p. 20. It is also undisputed that, after the second altercation, witnesses of the altercation contacted law enforcement. Doc. 98. When Defendant Teeple arrived at the scene, Ms. Whitcomb reported to him that Plaintiff held her against her will, attempted to snatch her keys, had snatched her cell phone, and took her vehicle, leaving her

stranded approximately 12 to 14 miles from her home. Doc. 98. Although Plaintiff denies these allegations, he does not deny that Ms. Whitcomb alleged them. Doc. 127.

After speaking with Ms. Whitcomb, Defendant Teeple called Plaintiff by telephone, threatened to arrest Plaintiff, and requested his location. Doc. 127. Defendant Teeple then brought Ms. Whitcomb to Plaintiff's residence where Ms. Whitcomb retook possession of the vehicle and their minor son. Doc. 127. While at Plaintiff's residence, Defendant Teeple encountered Plaintiff in his front yard. Doc. 127. According to the Plaintiff, Defendant Teeple then proceeded to position himself between the Plaintiff and the front door of Plaintiff's residence, placed his hand on his gun, and spoke to Plaintiff about the events that transpired earlier that day and evening. Doc. 127. Even though Plaintiff claims that Defendant Teeple questioned Plaintiff about the incidences that occurred earlier that evening, and threatened to arrest Plaintiff, Plaintiff admits that he was never arrested or charged with any offenses. Doc. 127. During this incident, it is undisputed that Defendant Teeple was not told that both Plaintiff and Ms. Whitcomb had custody of their minor son. Doc. 99-3, p. 63; Doc. 126-10, p. 28. He was, however, aware they were experiencing marital difficulties. Doc. 99-3, p. 52. It is also undisputed that Defendant Teeple did not physically touch Plaintiff or draw his gun. Doc. 127.

From September 20, 2010, to November 8, 2010, Defendant Teeple did not have contact with either Ms. Whitcomb or Plaintiff except to testify at a civil domestic violence injunction hearing filed by Ms. Whitcomb. Doc. 90, 127. On September 21, 2010, Plaintiff filed a petition for dissolution of marriage. Doc. 127. The restraining order sought by Ms. Whitcomb on September 20, 2010, was denied on September 30, 2010. Doc. 127.

According to Plaintiff, after September 19, 2010, Ms. Whitcomb prevented him from seeing their minor child. Doc. 1, at ¶17. In October, Plaintiff attempted to contact various agencies and programs for assistance in locating his minor son. Doc. 127. He was told by those agencies, including Bay County Sheriff's Office, Panama City Police Department, and the Department of Family Services, that the agencies could not assist him because it was a civil matter. Doc. 127. Subsequently, Plaintiff enlisted the aid of his adult children to locate Ms. Whitcomb and the minor child's location. Doc. 127.

On November 8, 2010, Plaintiff's adult children followed Ms. Whitcomb to the Health Department in Panama City, and contacted Plaintiff by telephone to inform him that Ms. Whitcomb and the minor child were there. Doc. 127. Plaintiff and Ms. Whitcomb disagree on what occurred in the Health Department parking lot. However, it is undisputed that the minor child, who was admittedly forcibly taken from Ms. Whitcomb, was later located with Plaintiff in Walton

County.  Doc. 127; Doc. 126-16, p. 7.  While on his way to Walton County, Plaintiff was contacted by an officer with the Panama City Police Department.  Doc. 127.  During this conversation, Plaintiff explained to the officer that there were no formal custody orders in place.  Doc. 127.  However, the officer ordered Plaintiff to reveal his location and turn himself in on charges of kidnapping his minor son.  Doc. 127.

Plaintiff eventually stopped his vehicle in Walton County, and the Walton County Sherriff's Deputies arrived.  Doc. 127.  Again, Plaintiff explained that there were no court orders in place preventing Plaintiff from having physical custody of his minor son.  Doc. 127.  The Walton Count officers informed Plaintiff that because the Panama City Police Department was in the process of obtaining an arrest warrant, they had to hold him.  Doc. 127.  While awaiting service of the arrest warrant, Defendant Teeple arrived at Plaintiff's location and "merely confirmed Plaintiff's identity and left."  Doc. 127.  It is undisputed that Defendant Teeple did not arrest Plaintiff, did not obtain an arrest warrant, and did not have further contact with Plaintiff or Ms. Whitcomb.  Doc. 99-1, p. 44, 48, 50.  It is also undisputed that Defendant Teeple did not make the decision to charge Mr. Whitcomb with kidnapping.  Doc. 127, Doc. 126-18, p. 4.  Notably, Defendant Teeple did not have any communications with the arresting officer on November 8, 2010.  Doc. 99-5.

After the Panama City Police Department obtained the arrest warrant, Plaintiff was taken into custody and held at the Walton County Jail until November 13, 2010, when he appeared before Judge Overstreet in Bay County. Doc. 127. Judge Overstreet found no probable cause for Plaintiff's arrest and released him from custody. Doc. 126-5. On February 17, 2011, Plaintiff was charged with Interfering with Child Custody. Doc. 126-8. However, on May 23, 2011, this charge was dismissed. Doc. 126-7.

## **ANALYSIS**

*Count I: Fourth Amendment Arrest*

Although Rule 8(a) of the Federal Rules of Civil Procedure is a liberal pleading standard, the liberal notice pleading of Rule 8(a) is inapplicable after discovery has commenced. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). The liberal pleading standard "does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Id*. The proper procedure for plaintiffs to assert new claims is to amend the complaint in accordance with Rule 15(a) of the Federal Rules of Civil Procedure. *Id*. Accordingly, "[a] plaintiff may not amend . . . [a] complaint through argument in a brief opposing summary judgment." *Id*.

In Count I of Plaintiff's complaint, Plaintiff alleges that Defendant Teeple arrested Plaintiff, "without probable cause and thereafter caused the wrongful

imprisonment of the Plaintiff in violation of the Fourth Amendment to the Constitution[.]" Doc. 96. The only date Plaintiff was arrested and imprisoned was on November 8, 2010. However, Plaintiff now claims in his response opposing Defendants' Motion for Summary Judgment that Defendant Teeple also violated Plaintiff's Fourth Amendment rights on September 5, 2010, when he was taken into custody pursuant to the Baker Act and on September 19, 2010, when Defendant allegedly "seized" and "restrained" Plaintiff while on Plaintiff's front lawn. Doc. 129.

After a careful reading of the complaint, I conclude that Count I of the complaint only alleges that Plaintiff's Fourth Amendment rights were violated when he was arrested, without probable cause, on November 8, 2010. Doc. 1, ¶¶ 29 (Defendants "arrested Plaintiff"), 33 (Defendants "caused Plaintiff to remain wrongfully imprisoned"), 35 (Defendants "knew or should have known that there was no probable cause to arrest Plaintiff"), 36 (Defendants "arrest[ed] Plaintiff"), 38 ("the arrest of Plaintiff"), 39 (Defendants failed to implement policies and train employees on proper investigations of persons who are to be arrested), 43 ("Plaintiff was falsely arrested and imprisoned"). Notably, Plaintiff used different language in Counts II-IV of his Complaint. Doc. 1, ¶¶ 47 ("unlawfully arrested and restrained Plaintiff"), 48 ("confining Plaintiff"), 49 ("unlawfully restrained"),

53 ("arrested and restrained"), 54 ("confining Plaintiff"), 55 ("unlawfully restrained"), 60 ("detained" and "taken into custody").

Prior to raising these claims through argument in a brief opposing summary judgment, Plaintiff has not attempted to amend his complaint. The Eleventh Circuit has clearly stated that it is improper for a plaintiff to amend his complaint in this manner. See *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, Count I of Plaintiff's complaint only applies to the circumstances surrounding Plaintiff's arrest for "Conspiracy to Commit Kidnapping §787.01, Florida Statutes" that occurred on and after November 8, 2010.

The Fourth Amendment, incorporated to the states by the Fourteenth Amendment, protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that "violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). For Defendant Teeple's actions to constitute a Fourth Amendment seizure, he would have had to intentionally apply the means that terminated Plaintiff's freedom of movement. *See id*.

On November 8, 2010, Plaintiff was arrested for Conspiracy to Commit Kidnapping by Walton County Sherriff's Deputies pursuant to an arrest warrant obtained by the Panama City Police Department. When Defendant Teeple,

employed by the Bay County Sheriff, arrived at Plaintiff's location, Plaintiff was already seized by the Walton County Sheriff's officials for Fourth Amendment purposes. Defendant Teeple did not cause, nor participate, in Plaintiff's seizure. He "merely [correctly] confirmed Plaintiff's identity."

Although Plaintiff alleges that "Defendant Teeple was in contact with both Panama City Police officials, as well as Walton County Sheriff's officials throughout the process of the incident[,]" Plaintiff has provided no evidence to support this conclusion. Doc. 129. In fact, it is undisputed that Defendant Teeple did not have any communications with the arresting officer on November 8, 2010, or after. Doc. 99-5. Plaintiff further alleges that Defendant Teeple did not disclose to "either Panama City Police officials seeking the arrest warrant, nor Walton County Sheriff's officials who enforced the arrest warrant," that there were no formal custody orders in place relative to Plaintiff's minor child. Doc. 129. Plaintiff, however, has failed to provide any factual evidence that Defendant Teeple new on November 8, 2010, that a formal custody order had not been placed.

Additionally, Defendant Teeple did not "intentionally lie[] in the arrest affidavit," "make deliberately false statements to support a false arrest" or provide false information to the Walton County Sheriff's officials as alleged by Plaintiff. Doc. 129. The parties do not dispute that Defendant Teeple did not arrest Plaintiff,

did not obtain an arrest warrant, and did not make the decision to charge Plaintiff with kidnapping or to arrest him.  Doc. 99-1,99-5, Doc. 127, Doc. 126-18, p. 4.

Accordingly, Count I of Plaintiff's Complaint as it relates to Defendant Teeple is **DISMISSED**.[1]  Notably, even if Count I of the complaint applies to the events that occurred on September 5, 2010, and September 19, 2010, judgment as a matter of law would be granted in favor of Defendant Teeple for the reasons set forth below.

*Count II and III: False Arrest/Imprisonment*

Plaintiff brought two false arrest claims.  In Counts II, Plaintiff alleges that Defendant McKeithen, "through [his] employees and agents," who were "functioning within the scope of their respective employments," unlawfully arrested, restrained, and confined Plaintiff without any reasonable cause or probable cause. Doc. 1, ¶¶ 47-8.  Alternatively, in Count III, Plaintiff alleges that Defendant Teeple, while "acting outside the course and scope of his duties and employment[,]" intentionally and unlawfully arrested, restrained, and confined Plaintiff without any reasonable cause, color of authority, justification, or probable cause.  Doc. 1, ¶¶ 52-4.

For a false arrest and/or imprisonment claim under Florida law, the exclusive remedy "for injury or damage suffered as a result of an act, event, or

---

[1] On March 13, 2013, by Order (Doc. 27), Count I of the Complaint was dismissed as to Defendant McKeithen.

omission of an officer, employee, or agent of the state . . . shall be by action against the governmental entity, or the head of such entity in . . . his official capacity[.]" Fla. Stat. Ann. § 768.28. However, if "such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property[,]" then an employee of the state may be held personally liable in tort for any injury or damage as a result of any act, event, or omission outside the course and scope of employment. *Metro. Dade Cnty. v. Kelly*, 348 So. 2d 49, 50 (Fla. Dist. Ct. App. 1977) (*citing* Fla. Stat. Ann. § 768.28(9)).

Thus, in a state law false arrest claim, the head of a government entity may be held liable in his official capacity if there is an "unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty[.]" *Johnson v. Weiner*, 155 Fla. 169, 171, 19 So.2d 699 (1944). Conversely, for individual liability, the Plaintiff must not only prove that there was an unlawful restraint, but also that the agent was acting outside the course and scope of his employment and that he acted in bad faith, with malicious purpose or in a manner exhibiting willful and wanton disregard of human rights or safety. *See* Fla. Stat. Ann. § 768.28.

Even without an official arrest, a plaintiff may be detained and deprived of his liberty without the deprivation being unlawful. Both federal and Florida courts

recognize three levels of police-citizen encounters. *See U.S. v.Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986); *Popple v. State*, 626 So.2d 185 (Fla. 1993). Because the first type of encounter is voluntary, "constitutional safeguards are not invoked." *Popple*, at 186. The second encounter involves investigatory stops. *Id*. The court uses an objective standard to determine if an investigatory stop has occurred: whether a reasonable person would have believed that he was not free to leave. *See Immigration and Naturalization Service v. Delgado,* 466 U.S. 210 (1984); *Popple*, at 188. Lastly, a formal arrest is a seizure under the Fourth and Fourteenth Amendment and requires probable cause. *Popple*, at 186.

For a seizure to violate the constitution, and thus be unlawful, it must be unreasonable. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). Absent an arrest, "a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." *Popple*, at 186 (*citing* § 901.151 Fla.Stat. (1991)). Mere suspicion of a crime is not enough. *See Carter v. State,* 454 So.2d 739 (Fla. 2d DCA 1984). Instead, to be constitutional, an investigatory stop "requires a well-founded, articulable suspicion of criminal activity." *Popple*, at 186.

When a law enforcement officer takes a person into custody for involuntary examination pursuant to Section § 394.463, this encounter is an involuntary deprivation of liberty and thus must be lawful to withstand a claim for false

imprisonment. *See Johnson v. Weiner*, 155 Fla. 169, 171, 19 So.2d 699 (1944).

Under Florida's Mental Health Act, a "law enforcement officer **shall** take a person who appears to meet the criteria for involuntary examination into custody and deliver the person . . . to the nearest receiving facility for examination." Fla. Stat. Ann. § 394.463 (emphasis added). A person, under this statutory scheme,

> [M]ay be taken to a receiving facility for involuntary examination if there is **reason to believe** that . . . because of his . . . mental illness . . . There is a **substantial likelihood** that without care or treatment the person will cause serious bodily harm to himself . . . or others in the near future, as evidenced by recent behavior.

Fla. Stat. Ann. § 394.463 (emphasis added). It is evident from Florida's statutory scheme that the legislature intended to grant civil immunity to law enforcement officers who act in good faith compliance with the Mental Health Act in connection with the involuntary examination of a person pursuant to Florida's Baker Act. Fla. Stat. Ann. § 394.459.

Plaintiff first argues that he was falsely imprisoned on September 5, 2010, when he was placed into custody by Defendant Teeple for involuntary examination pursuant to section 394.463, Florida's Baker Act statute. Besides bare-bone allegations that Defendant Teeple detained Plaintiff in bad faith, with malicious purpose or in a manner exhibiting willful and wanton disregard of human rights or safety, Plaintiff has not provided any evidence to support the conclusion that he

has met the standard required to hold Defendant Teeple individually liable. *See* Fla. Stat. Ann. § 768.28.

Absent a finding of good faith compliance, however, Defendant McKeithen, in his official capacity as Sheriff of Bay County, may be held liable under the state law claim for false imprisonment. *See* Fla. Stat. Ann. § 394.459. Defendant Teeple took Plaintiff, "who appear[ed] to meet the criteria for involuntary examination into custody and deliver[ed]" Plaintiff to Emerald Coast Behavioral Hospital. Fla. Stat. Ann. § 394.463. Plaintiff claims that Defendant Teeple failed to comply with the Baker Act because he explained to Defendant Teeple he had made the threat to "end it all" in an attempt to shock Ms. Whitcomb and was "trying to see if she cared about" him. He also explained that he actually meant that he was going to end the marriage after his cigarette, not kill himself. Moreover, when Defendant Teeple took custody of Plaintiff, he was in the middle of a social gathering with friends and with his young children.

Under the statutory standard, a law enforcement officer is required to take a person into custody for involuntary examination if that person appears to meet the statutory criteria. Fla. Stat. Ann. § 394.463. It is undisputed that Ms. Whitcomb reported to Defendant Teeple and the 911 operator that Plaintiff threatened to kill himself, Plaintiff admitted to making the statements that he was "going to end it all after [I] finish [my] last cigarette," and admitted to owning a shotgun. Based on

the undisputed evidence, I find that Defendant Teeple did comply with the statute in good faith. Accordingly, section 394.463 provides immunity to Defendant McKeithen.

Next, Plaintiff claims that he was falsely imprisoned by Defendant Teeple on September 19, 2010. Plaintiff admits that he was not arrested on this date. However, he claims that because he was not able to move about freely he was unlawfully restrained against his will. According to the Plaintiff, when Defendant Teeple arrived at the house he positioned himself between the Plaintiff and the front door of Plaintiff's residence, placed his hand on his gun, and questioned Plaintiff about the events that transpired earlier that day and evening. It is clearly established that a police officer may lawfully detain a person temporarily if he has reasonable suspicion that a person has committed a crime. *See Popple,* at 186 (*citing* § 901.151 Fla.Stat. (1991)). He must have a "well-founded, articulable suspicion of criminal activity." *Id.* at 186.

Plaintiff has not met the standard to hold Defendant Teeple individually liable because there is no evidence of bad faith, malice, or wanton and willful disregard of human rights in the record. As such, the exclusive remedy for false arrest and/or imprisonment would be against Defendant McKeithen in his official capacity.

Defendant Teeple was dispatched pursuant to a 911 call. Plaintiff does not deny that Ms. Whitcomb reported to Defendant Teeple that earlier that day and evening, Plaintiff held her against her will, attempted to snatch her keys, had snatched her cell phone, and took her vehicle leaving her stranded approximately 12 to 14 miles from her home. When Defendant Teeple arrived at Plaintiff's location, Plaintiff had Ms. Whitcomb's vehicle, jointly owned by them, and the keys, corroborating her story. Plaintiff admits that although he was stopped and questioned about the earlier events, he was not arrested, was not charged for any crime, and Defendant Teeple never physically touched him. Because Defendant Teeple had reasonable suspicion to believe that Plaintiff had committed a crime, the temporary seizure of Plaintiff to conduct an investigation was not unlawful.

Lastly, Plaintiff claims that he was falsely imprisoned by Defendant Teeple on November 8, 2010. However, for reasons articulated above, Defendant Teeple did not restrain Plaintiff or deny Plaintiff his liberty on November 8, 2010. Likewise, Defendant McKeithen did not falsely imprison or deny Plaintiff his liberty on November 8, 2010.

Accordingly, Counts II and III of Plaintiff's Complaint as it relates to Defendant Teeple and Defendant McKeithen are **DISMISSED**.

*Count IV: Negligence*

Lastly, in Count IV of Plaintiff's complaint, Plaintiff alleges that Defendant McKeithen, from the date of Plaintiff's arrest until his release, was negligent because "he knew or should have known that Plaintiff was not guilty of the crime charged and the charges should have been dropped." Doc. 1, ¶ 58. To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). As stated earlier, Defendant Teeple did not arrest Plaintiff not participate in the decision to arrest or charge Plaintiff. Moreover, it is undisputed that Plaintiff was not imprisoned in Bay County. Therefore, Defendant McKeithen did not owe Plaintiff a duty of care. Accordingly, Count IV as it relates to Defendant McKeithen is **DISMISSED**.

## CONCLUSION

For the reasons articulated above, the relief requested in Defendant Scott Teeple's Motion for Summary Judgment (Doc. 96) and Defendant Frank McKeithen's Motion for Summary Judgment (Doc. 97) are **GRANTED**. The claims against Defendant Teeple and Defendant McKeithen are **DISMISSED with prejudice**.

**ORDERED** on December 30, 2013.

**/s/ Richard Smoak**
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**