## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**RONALD WHITCOMB,**

    **Plaintiff,**

**v.**                          **CASE NO.  5:13-cv-30-RS-EMT**

**CITY OF PANAMA CITY; FRANK
McKEITHEN, in his official capacity as
SHERIFF OF BAY COUNTY, FLORIDA;
CHRIS TAYLOR, individually; MARK
AVILES, individually; JEFFREY BECKER,
Individually; and SCOTT TEEPLE, individually,**

    **Defendants.**

_____/

## ORDER

    Before me are the Motion for Summary Judgment by Defendant Chris

Taylor (Doc. 113) and Plaintiff's Response and Memorandum in Opposition to

Defendant Taylor's Motion for Summary Judgment (Doc. 152).

## STANDARD OF REVIEW

    The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986).

The moving party has the burden of showing the absence of a genuine issue as to

any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

An issue of fact is material "if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Wright v. Sandestin Investments, LLC,* 914 F. Supp. 2d 1273, 1278 (N.D. Fla. 2012). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## <u>BACKGROUND</u>

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle*

*Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

On September 21, 2010, Plaintiff filed a petition for dissolution of marriage. Doc. 147.  The restraining order sought by Ms. Whitcomb on September 20, 2010, was denied on September 30, 2010.  Doc. 147.  According to Plaintiff, after September 19, 2010, Ms. Whitcomb prevented him from seeing their minor child. Doc. 1, at ¶17.  In October, Plaintiff attempted to contact various agencies and programs for assistance in helping locate his minor son.  Doc. 147.  He was told by those agencies, including Bay County Sheriff's Office, Panama City Police Department, and the Department of Family Services, that because it was a civil matter the programs could not assist.  Doc. 147.  Subsequently, Plaintiff enlisted the aid of his children to locate Ms. Whitcomb and the minor child's location. Doc. 147.

On November 8, 2010, Plaintiff's adult children followed Ms. Whitcomb to the Health Department in Panama City, and contacted Plaintiff via telephone to inform him that Ms. Whitcomb and the minor child were there.  Doc. 147. Although Plaintiff and Ms. Whitcomb disagree on what occurred in the Health Department parking lot, it is undisputed that the minor child, who was admittedly forcibly taken from Ms. Whitcomb, was later located with Plaintiff in Walton County.  Doc. 147; Doc. 126-16, p. 7.

After Plaintiff's adult children obtained the minor child and placed him in Plaintiff's vehicle, Plaintiff left the Health Department parking lot.  Doc. 147. Subsequently, Defendant Taylor, a law enforcement officer employed by the City of Panama City, Florida Police Department, and other officers, including Defendant Aviles, responded to Ms. Whitcomb's 911 call reporting the abduction of her three year old child.  Doc. 147.  On the 911 recording, Ms. Whitcomb reports that her estranged husband and she were going through a divorce and that her adult step-daughter and three men surrounded her in the Bay County Health Department parking lot and forcibly took her minor child.  Doc. 116-8.

During Ms. Whitcomb's sworn statement to Defendant Taylor, she reported that her soon to be ex-husband's daughter, Racheal, physically held her at her vehicle while three men grabbed her three-and-a-half year old son.  Doc. 116-2. Additionally, Ms. Whitcomb told Defendant Taylor that Plaintiff has had contact with the minor child, but has not seen him in about a month.  Doc. 116-2.  She was adamant, however, that she did not give Racheal or the three men permission to take the minor child.  Doc. 116-2.

While Defendant Taylor interviewed Ms. Whitcomb, the vehicle Ms. Whitcomb described in her sworn statement was located occupied with Racheal and a man later identified as Paul Hatfield.  Doc. 114.  However, the minor child was not located in the vehicle.  Doc. 147.  Racheal and Paul were brought to the

station where Defendant Taylor proceeded to question them under oath. Doc. 114.

While under oath, Racheal informed Defendant Taylor that the minor is Plaintiff's

child, Ms. Whitcomb had been hiding him from Plaintiff, and that it was Plaintiff's

idea to follow Ms. Whitcomb and forcibly take the minor from her. Doc. 116-3.

Racheal admitted that as soon as Ms. Whitcomb came out of the health department,

she forcibly grabbed the minor and took him to her dad, who was waiting a few

cars down. Doc. 116-3. Similarly, while under oath, Paul Hatfield corroborated

Racheal's statement and informed Defendant Taylor that Plaintiff personally told

him to get the minor child. Doc. 116-4.

  While on his way to Walton County, Plaintiff was contacted by an individual

who identified himself as Chris Taylor[1], Detective for Panama City Police

Department.  Doc. 147.  According to Plaintiff, during this conversation Plaintiff

explained to Defendant Taylor that there were no formal custody orders in place.

Doc. 147.  However, the officer ordered Plaintiff to reveal his location and turn

himself in on charges of kidnapping his minor son.  Doc. 147.  Plaintiff further

contends that Defendant Taylor "told Plaintiff that he did not want to have to have

law enforcement pull a gun on Plaintiff in front of" the minor child.  Doc. 147.

  Plaintiff eventually stopped his vehicle in Walton County, and the Walton

County Sherriff's Deputies arrived.  Doc. 147.  Again, Plaintiff explained that

---

[1] Defendant Taylor claims that Plaintiff actually spoke to Taylor's supervisor, Sergeant Smith.  Doc. 114.

there were no court orders in place preventing Plaintiff from having physical custody of his minor son.  Doc. 147.  The Walton Count officers informed Plaintiff that because the Panama City Police Department was in the process of obtaining an arrest warrant, they had to hold him.  Doc. 147.

In connection with his investigation, and after consultation with his supervisors Sergeant Mark Smith and Lieutenant Paul Powell, and the Office of the State Attorney on the issue of probable cause, Defendant Taylor executed a probable cause affidavit seeking a warrant for Whitcomb's arrest based on conspiracy to commit kidnapping.  Doc. 113.  In the probable cause affidavit, Defendant Taylor states that the Plaintiff,

> did without lawful authority knowingly procure another **to take a three year old child from his mother** in the **absence of a court order determining custody or visitation**. He did so by soliciting his daughter Racheal Krueger-Whitcomb, his son Timothy Whitcomb and Racheal's boyfriend Paul Hatfield to locate the child and his mother. Upon locating the child and his mother Racheal called her father and told him they had located the two and she was following them. Upon the arrival of the child and his mother at the Bay County Health Department Racheal called her father and let him know their location.
>
> The [Plaintiff] arrived at the health department and waited for his daughter, his son and her boyfriend to take the child by force and deliver the child to him against the child's mothers will. He did receive the three year old child from his son Timothy Whitcomb who took the child from the custody of his mother against her will. The [Plaintiff] left the health department with the child and was located in Walton County, Florida with the child in his custody without the permission of the mother.

Doc. 116-5 (emphasis added). Plaintiff does not dispute that a judge issued a warrant for Plaintiff's arrest, but claims that the affidavit presented to the judge was not accurate or truthful.  Doc. 147.  According to Defendant Taylor, he personally drove his warrant application to the home of Judge Shane Vann, and after explaining the nature of the situation to the Judge, Judge Shane Vann determined that probable cause existed and issued a warrant for Plaintiff's arrest. Doc. 114, Doc. 116-5.

After the Panama City Police Department obtained the arrest warrant, Plaintiff was placed into custody and held at the Walton County Jail until November 13, 2010, when he appeared in front of Judge Overstreet.  Doc. 147. Judge Overstreet found no probable cause for Plaintiff's arrest and released him from custody.  Doc. 126-5.  On February 17, 2011, the Office of the State Attorney charged Plaintiff with Interfering with Child Custody.  Doc. 126-8.  However, on May 23, 2011, this charge was dismissed.  Doc. 126-7.

## ANALYSIS

### Count I: Fourth Amendment Arrest

In Count I of Plaintiff's complaint, Plaintiff alleges that Defendant Taylor violated the Fourth Amendment when he arrested Plaintiff, on November 8, 2010, without probable cause or other legal process.  Doc. 1.  Defendant Taylor claims that he is entitled to judgment as a matter of law because 1) Plaintiff was arrested

pursuant to a facially valid warrant and/or 2) probable cause existed to arrest Plaintiff.  Doc. 113.  In the alternative, Defendant Taylor claims that he is entitled to qualified immunity.  Doc. 113.

The Fourth Amendment, incorporated to the states by the Fourteenth Amendment, protects individuals from "unreasonable searches and seizures."  U.S. Const. amend. IV. The Supreme Court has held that "violation of the Fourth Amendment requires an intentional acquisition of physical control."  *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).  Existence of a Fourth Amendment seizure is not enough for § 1983 liability. *See id.* at 599. The seizure must also be unreasonable. *Id.* For a § 1983 action, the existence of probable cause is an affirmative defense.  *See Jackson v. Navarro*, 665 So. 2d 340, 342 (Fla. Dist. Ct. App. 1995). However, the burden of proof is on the plaintiff to demonstrate the absence of probable cause.  *See Russ v. GEO Group, Inc.*, 2012 WL 6634800, at *7 (N.D. Fla. Dec. 20, 2012).

Generally, a plaintiff "cannot base a valid Fourth Amendment claim on an arrest made pursuant to a valid warrant." *Robinson v. Powers*, No. 1:11–cv–24–MP–GRJ, 2012 WL 4088862, at *8 (N.D. Fla. May 23, 2012).  The judge's issuance of the arrest warrant "'br[eaks] the chain of causation for the detention from the alleged false arrest.'" *Jones v. Cannon,* 174 F.3d 1271, 1287 (11th Cir.1999).

However, if the warrant "was secured based upon an affidavit that contained misstatements made either intentionally or with reckless disregard for the truth . . . [or] contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit[,]" then the officer may not rely upon the judge's probable cause determination. *See Smith v. Sheriff, Clay Cnty., Fla.,* 506 F. App'x 894, 898 (11th Cir. 2013)*; see Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012). The Supreme Court has recently stated that "it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Messerschmidt*, 132 S.Ct. at 1245. Thus, information that is only negligently omitted from the probable cause affidavit will not invalidate a warrant. *See Smith,* at 898. Likewise, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.*

When a plaintiff is arrested absent a valid warrant, however, the analysis is different.  It is clearly established that a warrantless arrest, without probable cause and absent an exception, is unreasonable and thus violates the Fourth Amendment. *See e.g., Madiwale v. Savaiko*, 117 F.3d 1321 (11th Cir. 1997) (*citing Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).  Under Federal law, "For probable cause to exist . . . an arrest must be objectively reasonable based on the totality of

the circumstances[.]" *United States v. Lyons,* 403 F.3d 1248, 1253 (11th Cir. 2005)

*quoting Lee v. Ferraro,* 284 F. 3d 1188, 1195 (11th Cir. 2002).

A court, when deciding whether there was probable cause to arrest, looks to events leading up to the arrest from the perspective of an objectively reasonable officer. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (*citing Ornelas v. United States,* 517 U.S. 690, 696 (1966)). Thus, probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Lyons,* 403 F.3d 1248, 1253 (11th Cir. 2005) (*quoting Lee v. Ferraro,* 284 F. 3d 1188, 1195 (11th Cir. 2002)). If the facts and circumstances within the investigator's knowledge at the time are sufficient for probable cause to exist, then the existence of probable cause is not affected if it is later learned that the suspect did not actually commit the crime. *See Beck v. Ohio,* 379 U.S. 89 (1964), *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979). An arresting officer is, however, required to conduct a reasonable investigation to establish probable cause. *Rankin v. Evans*, 133 F.3d 1425, 1435-36 (11th Cir. 1998).

Even if a defendant's conduct violated a constitutional right, a defendant may still be immune from liability. Qualified immunity is a shield against liability for government actors, prohibiting "civil damages for torts committed while

performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "'allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).   "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability . . . .'" *Scott v. Harris*, 550 U.S. 372, 372 n.2 (2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Qualified immunity requires a three-step inquiry.  First, the defendant public official must prove that "'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson v. McMillan,* 939 F.2d 1479 (11th Cir. 1991)(quoting *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988)).  Once this is established, the burden shifts to the plaintiff, and the second question is "whether '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that Defendant's] conduct violated a constitutional [or statutory] right?' If so, the [next] question is whether the right, be it constitutional or statutory, was clearly established." *Hadley v. Gutierrez*, 526

F.3d at 1329 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001))(internal citations omitted).

Accordingly, "officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)(citing *Jones v. Cannon,* 174 F.3d 1271, 1283 (11th Cir. 1999)).  Arguable probable cause exists if reasonable officers in the same circumstances and possessing the same knowledge as Defendant could have believed that probable cause existed to arrest Plaintiff. *See id.*

<u>Existence of a Warrant</u>

On November 8, 2010, Plaintiff was arrested for Conspiracy to Commit Kidnapping by Walton County Sherriff's Deputies pursuant to an arrest warrant obtained by Defendant Taylor of the Panama City Police Department.  Plaintiff alleges that the arrest warrant was invalid because it contained "false and/or inaccurate information, including but not limited to the fact that the Plaintiff had lawful authority to have custody of his child, in the absence of a court order, and the fact that the Plaintiff did not give anyone permission to take [the minor child] by force[.]"  Doc. 147.

First, whether Plaintiff gave anyone permission to take the minor child by force is a 'fact' that was determined after the issuance of the arrest warrant. When

determining probable cause, the court will look at the facts and circumstances within the officer's knowledge at the time the arrest was made. *See United States v. Lyons,* 403 F.3d 1248, 1253 (11th Cir. 2005) (*quoting Lee v. Ferraro,* 284 F. 3d 1188, 1195 (11th Cir. 2002)). During Defendant Taylor's investigation, he interviewed Racheal Whitcomb and Paul Hatfield.  Both Racheal and Paul testified under oath that Plaintiff was the minor child's father and that it was Plaintiff's idea and request that they forcibly take the minor child from Ms. Whitcomb.  Doc. 116-3, 116-4. A reasonable person would believe, under the circumstances, that Plaintiff not only gave them permission to forcibly take the minor child from his mother without permission, but that Plaintiff actually procured them to do so. It is immaterial to a probable cause determination whether Plaintiff actually committed the crime.  *See Beck v. Ohio,* 379 U.S. 89 (1964).

Second, Plaintiff argues that the probable cause affidavit intentionally omitted that Plaintiff was the biological father of the minor child and that there were no court orders determining custody or visitation. Doc. 152. The probable cause affidavit clearly state that the Plaintiff, "did without lawful authority knowingly procure another to take **a** three year old child from his mother in the **absence of a court order determining custody or visitation**." Doc. 116-5 (emphasis added). Therefore, the affidavit itself states that there were no court orders determining custody or visitation which would prevent Plaintiff from having

custody of the child. The affidavit does not, however, explicitly communicate to the issuing judge that Plaintiff was the biological father of the minor child. Under the summary judgment standard, any ambiguity must be accepted in the light most favorable to the non-movant. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008)

   Taking the facts in the light most favorable to the Plaintiff, the Plaintiff may argue that this omission was intentionally or recklessly made.  However, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Smith v. Sheriff, Clay Cnty., Fla.,* 506 F. App'x 894, 898 (11th Cir. 2013).  At the time of the arrest there was a direct conflict of law on whether a biological parent could kidnap their own child for purposes of section 787.01.  *Johnson v. State*, 637 So. 2d 3, 4 (Fla. Dist. Ct. App. 1994) (a biological parent cannot be convicted of kidnapping his own child under section 787.01(1)(b)); *Lafleur v. State,* 661 So.2d 346, 348 (Fla. 3d DCA 1995) (holding father who takes child contrary to court order can be convicted of kidnapping his own child); *Muniz v. State*, 764 So. 2d 729 (Fla. Dist. Ct. App. 2000) (holding that absent a court order, a biological father could not be convicted of kidnapping his own child) *disapproved of by Davila v. State*, 75 So. 3d 192 (Fla. 2011); *Davila v. State*, 26 So. 3d 5, 7 (Fla. Dist. Ct. App. 2009) (a biological parent, regardless of court order, may be liable for kidnapping his own

child if he does not simply exercise his rights to the child, but takes him for an ulterior and unlawful purpose which is specifically forbidden by the kidnapping statute itself) *approved,* 75 So. 3d 192 (Fla. 2011) (section 787.01(1)(b) does not preclude a parent from being held criminally liable for kidnapping his own child).

Because Florida law was not clearly established on what circumstances would allow a biological parent to be held liable for kidnapping under section 787.01, omitting the fact that Plaintiff was the minor child's biological parent may have precluded the finding of probable cause by the issuing judge if Plaintiff was charged with kidnapping. Plaintiff, however, was not charged with kidnapping. Defendant Taylor completed the affidavit and the affidavit was subsequently procured on the charge of Conspiracy to Commit Kidnapping.

Under Florida law, a person is guilty of 'conspiracy' if they "solicit[] another to commit an offense prohibited by law and in the course of such solicitation command[], encourage[], hire[], or request[] another person to engage in specific conduct which would constitute such offense . . . ." Fla. Stat. Ann. § 777.04(2). Racheal and Paul both testified under oath to Defendant Taylor that Plaintiff requested them to forcibly take a child, under thirteen years old, from his mother without her consent. Racheal and Paul's conduct clearly constitute kidnapping under section 787.01. Accordingly, the inclusion of Plaintiff's biological relationship to the minor child in the affidavit would not have prevented

a finding of probable cause for conspiracy to commit kidnapping.  *See Messerschmidt v. Millender*, 132 S.Ct. 1235 (2012) ("it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.").

Thus, Plaintiff "cannot base a valid Fourth Amendment claim on an arrest made pursuant to a valid warrant[.]" *Robinson v. Powers*, No. 1:11–cv–24–MP–GRJ, 2012 WL 4088862, at *8 (N.D. Fla. May 23, 2012).  Summary judgment is **GRANTED** in favor of Defendant Taylor for Count I.

<u>Existence of Probable Cause</u>

Even absent a valid arrest warrant, probable cause existed to arrest Plaintiff for conspiracy to commit kidnapping.  It is undisputed that Racheal and Paul do not have custody of the minor child and that they swore, under oath, to Defendant Taylor that Plaintiff encouraged and requested them to forcibly to take the minor child from his mother. Although at the time of the arrest there was conflicting case law in Florida on whether a parent could be convicted of kidnapping his own child, there was not conflicting case law that an individual, who was not the parent, could be convicted of kidnapping under these circumstances.

Furthermore, in 2009 the Florida Court of Appeals held that a biological parent, regardless of a court order in place, could be liable for the kidnapping itself

if one of the four specific intents delineated in 787.01(1)(a) were established. *Davila v. State*, 26 So. 3d 5, 7 (Fla. Dist. Ct. App. 2009).  This holding was in direct conflict with another court appeals case. *See Muniz v. State*, 764 So. 2d 729 (Fla. Dist. Ct. App. 2000) (holding that absent a court order, a biological father could not be convicted of kidnapping his own child) *disapproved of by Davila v. State*, 75 So. 3d 192 (Fla. 2011) (section 787.01(1)(b) does not preclude a parent from being held criminally liable for kidnapping his own child).

Although a conviction of kidnapping requires proof beyond reasonable doubt of an unlawful intent, intent is not necessary in order to establish probable cause to arrest.  *United States v. Everett,* 719 F.2d 1119, 1120 (11th Cir. 1983); *see also Jordan v. Mosley,* 487 F. 3d 1350, 1355 (11th Cir. 2007) ("even for a criminal statute that requires proof of an intent . . . an arresting officer does not need evidence of the intent for probable cause to arrest to exist").  Looking at the totality of the circumstances, it was reasonable for Defendant Taylor to infer that Plaintiff had requested another person to forcibly take a minor child from his mother, without her consent, and with the intent to terrorize the mother.  *See* Fla. Stat. Ann. § 787.01.

<u>Qualified Immunity</u>

There is no dispute among the parties that Defendant Taylor was on-duty at the time of the incident.  Therefore, the first step is met, and the burden shifts to

Plaintiff to show that Defendant violated a clearly established constitutional right. For the reasons articulated above, Plaintiff is unable to meet this burden. In this case, Defendant Taylor could have believed that probable cause existed to arrest Plaintiff because the arrest was made pursuant to a valid warrant.

Moreover, although there was a Florida Court of Appeals decision from 2000 that a biological parent could not be held liable for kidnapping, there was a 2009 Florida Court of Appeals decision that held that a parent could be held liable for kidnapping. Thus, Florida law was not clearly established on what Plaintiff's statutory rights were.[2]  Thus, a reasonable person, with the facts and circumstances within Defendant Taylor's knowledge, could believe that Plaintiff "has committed, is committing, or is about to commit an offense[.]"*United States v. Lyons,* 403 F.3d 1248, 1253 (11th Cir. 2005) (*quoting Lee v. Ferraro,* 284 F. 3d 1188, 1195 (11th Cir. 2002)).

Accordingly, Count I of Plaintiff's Complaint as it relates to Defendant Taylor is **DISMISSED**.

*Count III: False Arrest/Imprisonment*

In Count III, Plaintiff alleges that Defendant Taylor, while "acting outside the course and scope of his duties and employment[,]" intentionally and unlawfully

---

[2] In 2011, the Florida Supreme Court held that a biological parent is not exempt from being held liable for kidnapping. *Davila v. State*, 75 So. 3d 192 (Fla. 2011).

arrested, restrained, and confined Plaintiff without any reasonable cause, color of
authority, justification, or probable cause.  Doc. 1, ¶¶ 52-4.

False imprisonment and false arrest are "different labels for the same cause
of action." *Rankins v. Evans*, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998).  "Probable
cause is an absolute bar to claims for false arrest." *Mills v. Town of Davie*, 48
F.Supp.2d 1378, 1380 (S.D. Fla. 1999).  Sufficient probable cause to justify an
arrest exists where the facts and circumstances allow a reasonable officer to
conclude that an offense has been committed and requires an examination of the
totality of the circumstances. *Id.*  As discussed above in Count I, the arrest was
made pursuant to a valid warrant.  Additionally, even absent a valid warrant, a
reasonable officer in similar circumstances could have believed there was probable
cause to arrest Plaintiff.  Therefore, there is an absolute bar to this claim for false
imprisonment.

Furthermore, for a false arrest and/or imprisonment claim under Florida law,
the exclusive remedy "for injury or damage suffered as a result of an act, event, or
omission of an officer, employee, or agent of the state . . . shall be by action
against the governmental entity, or the head of such entity in . . . his official
capacity[.]"  Fla. Stat. Ann. § 768.28.  An exception exists if "such act or omission
was committed in bad faith or with malicious purpose or in a manner exhibiting
wanton and willful disregard of human rights, safety, or property[.]" *Id.* Only

under those limited circumstances can an employee of the state be held personally

liable in tort for any injury or damage as a result of any act, event, or omission

outside the course and scope of employment. *Metro. Dade Cnty. v. Kelly*, 348 So.

2d 49, 50 (Fla. Dist. Ct. App. 1977) (*citing* Fla. Stat. Ann. § 768.28(9)).

Plaintiff claims that he was falsely imprisoned by Defendant Taylor on

November 8, 2010. Plaintiff argued that Defendant Taylor failed to conduct a

reasonable investigation, evidence by his failure to properly question witnesses

prior to completion of the probable cause affidavit.  Doc. 152. Furthermore,

Plaintiff claims that Defendant Taylor did not disclose exculpatory information

that Plaintiff was the minor child's biological father, did not question witnesses

and determine whether there were custody orders in place, and did not determine

whether Ms. Whitcomb had previously filed a false domestic violence claim

against Plaintiff.  Doc. 152.

As set forth above, Plaintiff's biological relationship to the minor child was

not exculpatory information and did not affect the determination of probable cause.

Additionally, Defendant Taylor did ask the witnesses and did procure information

that Plaintiff and Ms. Whitcomb were still married and that there were no formal

custody orders in place. He even included this information in the probable cause

affidavit. Lastly, whether Ms. Whitcomb had previously filed an injunction against

Plaintiff that was subsequently denied is immaterial to the finding of probable

cause on whether Plaintiff had or was currently committing a crime. If, arguably, Ms. Whitcomb was not a reliable witness because of the previous request for a restraining order, Defendant Taylor could have relied exclusively on Racheal and Paul's assertion that Plaintiff encouraged and requested them to forcibly take the minor child.

Accordingly, Plaintiff has not met the standard to hold Defendant Taylor individually liable because there is no evidence of bad faith, malice, or wanton and willful disregard of human rights in the record.  As such, the exclusive remedy for false arrest and/or imprisonment would be against "the governmental entity, or the head of such entity in . . . his official capacity[.]"  Fla. Stat. Ann. § 768.28.

Therefore, Count III of Plaintiff's Complaint as it relates to Defendant Taylor is **DISMISSED**.

### *Defendant Taylor's Request for Reasonable Fees and Costs*

In Defendant Taylor's motion for summary judgment he claims he is entitled to recover his reasonable fees and costs. The Supreme Court has held that § 1988 "authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice,* 131 S. Ct. 2205, 2213 (2011). The standard in awarding fees to a defendant is a "stringent" one and should not be determined only on the basis that the

plaintiff did not ultimately prevail. *Busby v. City of Orlando,* 931 F.2d 764, 787 (11th Cir. 1991); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978).

I cannot find that Plaintiff failed to "introduce any evidence to support [his] claims." *Sullivan v. School Bd. Of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985). Thus, Defendant Taylor's request for reasonable fees and costs is **DENIED**.

<u>CONCLUSION</u>

For the reasons articulated above, the relief requested in Defendant Taylor's Motion for Summary Judgment (Doc. 113) is **GRANTED in part**. The claims against Defendant Taylor are **DISMISSED with prejudice**. Additionally, Defendant Taylor's request for reasonable fees and costs is **DENIED**.

**ORDERED** on December 31, 2013.

> **/s/ Richard Smoak**
> **RICHARD SMOAK**
> **UNITED STATES DISTRICT JUDGE**