**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**RONALD WHITCOMB,**

     **Plaintiff,**

**v.**                       **CASE NO.  5:13-cv-30-RS-EMT**

**CITY OF PANAMA CITY; FRANK
McKEITHEN, in his official capacity as
SHERIFF OF BAY COUNTY, FLORIDA;
CHRIS TAYLOR, individually; MARK
AVILES, individually; JEFFREY BECKER,
Individually; and SCOTT TEEPLE, individually,**

     **Defendants.**
_____/

## ORDER

     Before me are Defendant Mark Aviles' Dispositive Motion for Summary

Judgment and Motion for Fees and Costs (Doc. 121) and Plaintiff's Response and

Memorandum in Opposition to Defendant Aviles' Motion for Summary Judgment

(Doc. 151).

## STANDARD OF REVIEW

     The basic issue before the court on a motion for summary judgment is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986).

The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

An issue of fact is material "if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Wright v. Sandestin Investments, LLC,* 914 F. Supp. 2d 1273, 1278 (N.D. Fla. 2012). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should

be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

On September 21, 2010, Plaintiff filed a petition for dissolution of marriage. Doc. 150. The restraining order sought by Ms. Whitcomb on September 20, 2010, was denied on September 30, 2010. Doc. 150. According to Plaintiff, after September 19, 2010, Ms. Whitcomb prevented him from seeing their minor child. Doc. 1, at ¶17. In October, Plaintiff attempted to contact various agencies and programs for assistance in helping locate his minor son. Doc. 150. He was told by those agencies, including Bay County Sheriff's Office, Panama City Police Department, and the Department of Family Services, that because it was a civil matter the programs could not assist. Doc. 150. Subsequently, Plaintiff enlisted the aid of his children to locate Ms. Whitcomb and the minor child's location. Doc. 150.

On November 8, 2010, Plaintiff's adult children followed Ms. Whitcomb to the Health Department in Panama City, and contacted Plaintiff via telephone to inform him that Ms. Whitcomb and the minor child were there. Doc. 150. Although Plaintiff and Ms. Whitcomb disagree on what occurred in the Health Department parking lot, it is undisputed that the minor child, who was admittedly

forcibly taken from Ms. Whitcomb, was later located with Plaintiff in Walton County.  Doc. 150; Doc. 126-16, p. 7.

After Plaintiff's adult children obtained the minor child and placed him in Plaintiff's vehicle, Plaintiff left the Health Department parking lot.  Doc. 150. Subsequently, Defendant Aviles, a law enforcement officer employed by the Panama City Police Department, and other officers, including Defendant Taylor, responded to Ms. Whitcomb's 911 call reporting the abduction of her three year old child.  Doc. 150.  On the 911 recording, Ms. Whitcomb reports that her estranged husband and she were going through a divorce and that her adult step-daughter and three men surrounded her in the Bay County Health Department parking lot and forcibly took her minor child.  Doc. 116-8.

According to deposition testimony, in November 2010, Defendant Aviles was the Captain of Investigations whose subordinates included one Lieutenant who directly supervised three Sergeants, who supervised their respective Investigators, Detectives, and Crime Scene Investigators.  Doc. 122.  Defendant Taylor was a detective in November 2010 and was subordinate to Sergeant Smith, then the Lieutenant, and then to Defendant Aviles.  Doc. 122.  As Defendant Taylor's direct supervisor, Sergeant Smith provided guidance and support to Defendant Taylor throughout the investigation. Doc. 122.

Although Defendant Aviles, a supervisor in the chain of command for Defendant Taylor, was present for a short period of time at the Health Department, it is undisputed that he did not investigate Ms. Whitcomb's allegations, nor did he question Defendant Taylor about the thoroughness of his investigation prior to the completion of the probable cause affidavit. Doc. 150, 154. Instead, Defendant Aviles waited on Sergeant Smith, who directly oversaw the investigation, to gather information and then provide such information to him. Doc. 122.

During Ms. Whitcomb's sworn statement to Defendant Taylor, she reported that her soon to be ex-husband's daughter, Racheal, physically held her at her vehicle while three men grabbed her three-and-a-half year old son. Doc. 116-2. Throughout the interview, Ms. Whitcomb was adamant that she did not give Racheal or the three men permission to take the minor child. Doc. 116-2.

While Defendant Taylor interviewed Ms. Whitcomb, the vehicle Ms. Whitcomb described in her sworn statement was located. Doc. 150. It was occupied by Racheal and a man later identified as Paul Hatfield. Doc. 150. However, the minor child was not located in the vehicle. Doc. 150. Racheal and Paul were brought to the station where Defendant Taylor proceeded to question them under oath. Doc. 122. While under oath, Racheal informed Defendant Taylor that the minor is Plaintiff's child, Ms. Whitcomb had been hiding him from Plaintiff, and that it was Plaintiff's idea to follow Ms. Whitcomb and forcibly take

the minor from her. Doc. 116-3. Racheal admitted that as soon as Ms. Whitcomb came out of the health department, she forcibly held Ms. Whitcomb while her brother grabbed the minor and took him to their dad, who was waiting a few cars down. Doc. 116-3. Similarly, while under oath, Paul Hatfield corroborated Racheal's statement and informed Defendant Taylor that Plaintiff personally told him to get the minor child. Doc. 116-4.

While on his way to Walton County, Plaintiff was contacted by an individual who identified himself as Chris Taylor[1], Detective for Panama City Police Department. Doc. 150. According to Plaintiff, during this conversation Plaintiff explained to Defendant Taylor that there were no formal custody orders in place. Doc. 150. However, the officer ordered Plaintiff to reveal his location and turn himself in on charges of kidnapping his minor son. Doc. 150. Plaintiff further contends that Defendant Taylor "told Plaintiff that he did not want to have to have law enforcement pull a gun on Plaintiff in front of" the minor child. Doc. 150.

Plaintiff eventually stopped his vehicle in Walton County, and the Walton County Sherriff's Deputies arrived. Doc. 150. Again, Plaintiff explained that there were no court orders in place preventing Plaintiff from having physical custody of his minor son. Doc. 150. The Walton County officers informed

---

[1] Defendant Aviles and Defendant Taylor both claim that Plaintiff actually spoke to Defendant Taylor's supervisor, Sergeant Smith. Doc. 122.

Plaintiff that because the Panama City Police Department was in the process of obtaining an arrest warrant they had to hold him.  Doc. 150.

Defendant Taylor executed a probable cause affidavit seeking a warrant for Whitcomb's arrest based on conspiracy to commit kidnapping.  Doc. 150.  It is undisputed that Defendant Aviles did not interview witnesses, did not participate in the investigation of the case, did not engage in an independent analysis of probable cause, and did not speak with the State Attorney's Office or the issuing judge about the existence of probable cause.  Doc. 122.

In the probable cause affidavit, Defendant Taylor states that the Plaintiff, "did without lawful authority knowingly procure another **to take a three year old child from his mother** in the **absence of a court order determining custody or visitation**[,]" and he "did so by soliciting his" daughter, son, and daughter's boyfriend to locate and "take the child by force and deliver the child to him against the child's mothers will[.]"  Doc. 116-5 (emphasis added). Plaintiff does not dispute that a judge issued a warrant for Plaintiff's arrest, but claims that the affidavit presented to the judge was not accurate or truthful.  Doc. 150.  According to Defendant Taylor, he personally drove his warrant application to the home of Judge Shane Vann, and after explaining the nature of the situation to the Judge, Judge Shane Vann determined that probable cause existed and issued a warrant for Plaintiff's arrest.  Doc. 114, Doc. 116-5.

After the Panama City Police Department obtained the arrest warrant, Plaintiff was placed into custody and held at the Walton County Jail until November 13, 2010, when he appeared in front of Judge Overstreet. Doc. 150. Judge Overstreet found no probable cause for Plaintiff's arrest and released him from custody. Doc. 116-10. On February 17, 2011, the Office of the State Attorney charged Plaintiff with Interfering with Child Custody. Doc. 116-11. However, on May 23, 2011, this charge was dismissed. Doc. 116-12. Plaintiff admits that he has no information or evidentiary support to suggest Defendant Aviles did anything to "lead to the alternate charge being filed against Plaintiff." Doc. 122, 150.

## ANALYSIS

*Count I: Fourth Amendment Arrest*

In Count I of Plaintiff's complaint, Plaintiff alleges that Defendant Aviles violated the Fourth Amendment by failing to properly supervise Defendant Taylor when Defendant Taylor arrested Plaintiff, on November 8, 2010, without probable cause or other legal process. Doc. 151. Defendant Aviles claims that he is entitled to judgment as a matter of law because 1) Plaintiff was arrested pursuant to a facially valid warrant and/or 2) probable cause existed to arrest Plaintiff. Doc. 121. In the alternative, Defendant Aviles claims that he is entitled to qualified immunity. Doc. 121.

The liability of Defendant Aviles in his individual capacity, under a theory of supervisory liability, must be predicated upon a finding of an underlying constitutional violation. *See Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003). The Eleventh Circuit has clearly established that supervisory officials "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Id.* at 1360. Supervisory liability under § 1983 may, however, occur when the "supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* The Eleventh Circuit has cautioned that the "standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* at 1361. Nevertheless, the necessary causal connection may be established when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1360.

Plaintiff does not dispute that Defendant Aviles did not participate in the alleged unconstitutional conduct that led to the arrest of Plaintiff on November 8, 2010. Instead, Plaintiff alleges that there is a causal connection between Defendant Aviles and Plaintiff's arrest based on Defendant Aviles failure to

supervise Defendant Taylor and "make certain that the investigation on November 8, 2010, was completed appropriately and that all necessary information was included in the probable cause affidavit." Doc. 151. Defendant Aviles has admitted that he did not directly supervise Defendant Taylor, did not personally interview witnesses, did not participate in the investigation of the case, did not engage in an independent analysis of probable cause, and did not question Defendant Taylor about the probable cause affidavit prior to submitting it to the issuing judge. Doc. 122. Therefore, the only question remaining is whether the facts support an inference that Defendant Aviles knew that Defendant Taylor would act unlawfully and yet failed to stop him from doing so.

I previously found that Defendant Taylor did not violate the Fourth Amendment when he arrested Plaintiff on November 8, 2010. Doc. 177. Thus, Defendant Taylor did not act unlawfully. Without an underlying constitutional violation, there cannot be supervisory liability of Defendant Aviles in his individual capacity. *See Cottone,* at 1360.

Therefore, judgment as a matter of law is **GRANTED** on Count I as it applies to Defendant Aviles.

### *Count III: False Arrest/Imprisonment*

In Count III, Plaintiff alleges that Defendant Aviles, while "acting outside the course and scope of his duties and employment[,]" intentionally and unlawfully

arrested, restrained, and confined Plaintiff without any reasonable cause, color of authority, justification, or probable cause. Doc. 1, ¶¶ 52-4.

For a false arrest and/or imprisonment claim under Florida law, the exclusive remedy "for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state . . . shall be by action against the governmental entity, or the head of such entity in . . . his official capacity[.]" Fla. Stat. Ann. § 768.28. An exception exists if "such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property[.]" *Id.* Only under those limited circumstances can an employee of the state be held personally liable in tort for any injury or damage as a result of any act, event, or omission outside the course and scope of employment. *Metro. Dade Cnty. v. Kelly*, 348 So. 2d 49, 50 (Fla. Dist. Ct. App. 1977) (*citing* Fla. Stat. Ann. § 768.28(9)).

Malice cannot be imputed via a vicarious liability theory. *See McGhee v. Volusia County,* 679 So. 2d 729 (Fla. 1996). Plaintiff has not met the standard to hold Defendant Aviles individually liable because there is no evidence to support a finding of bad faith, malice, or wanton and willful disregard of human rights in the record. Thus, Plaintiff's exclusive remedy for false arrest and/or imprisonment would be against "the governmental entity, or the head of such entity in . . . his official capacity[.]" Fla. Stat. Ann. § 768.28.

Moreover, a theory of supervisory liability must be predicated upon a finding of an underlying constitutional violation. *See Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003).  I have previously found that there was probable cause to arrest Plaintiff for conspiracy to commit kidnapping. Doc. 177.  "Probable cause is an absolute bar to claims for false arrest." *Mills v. Town of Davie*, 48 F.Supp.2d 1378, 1380 (S.D. Fla. 1999).

Accordingly, judgment as a matter of law is **GRANTED** on Count III as it applies to Defendant Aviles.

*Defendant Aviles' Request for Reasonable Fees and Costs*

In Defendant Aviles' motion for summary judgment he claims he is entitled to recover his reasonable fees and costs. The Supreme Court has held that § 1988 "authorizes a district court to award attorney's fees to a defendant 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice,* 131 S. Ct. 2205, 2213 (2011). The standard in awarding fees to a defendant is a "stringent" one and should not be determined only on the basis that the plaintiff did not ultimately prevail.  *Busby v. City of Orlando,* 931 F.2d 764, 787 (11th Cir. 1991); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978).

Plaintiff has not failed to "introduce any evidence to support [his] claims." *Sullivan v. School Bd. Of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985). Thus, Defendant Aviles' request for reasonable fees and costs is **DENIED**.

## CONCLUSION

For the reasons articulated above, the relief requested in Defendant Mark Aviles' Dispositive Motion for Summary Judgment and Motion for Fees and Costs (Doc. 121) is **GRANTED in part**. The claims against Defendant Aviles are **DISMISSED with prejudice**. However, Defendant Aviles' request for reasonable fees and costs is **DENIED**.

**ORDERED** on January 2, 2014.

> **/s/ Richard Smoak**
> **RICHARD SMOAK**
> **UNITED STATES DISTRICT JUDGE**